Thank you, Your Honor. May it please the Court, James Russ with the law firm of Shepard Mullen, Council of YCS Investments. Mr. Russ, can you get closer or is there any way because I can hear you, but I'm afraid you're not well. Is that better, Your Honor? You can go ahead and proceed, but I don't know if there's a way to increase your volume. I've turned up the microphone as much as it will go, but I'll try to speak a little louder. Okay. With the Court's permission, I'd like to reserve a couple minutes of my time for rebuttal. Your Honor, if the plaintiffs in this case were an individual or an environmental advocacy group making exactly the same allegation that YCS has made, we wouldn't be here. Their interest in the conservation of the Bay Checkerspot butterfly and their standing to bring this suit would be unquestionable. Well, I'm not sure about that, Mr. Russ. I want to explore that statement just a little bit because it's not so much that it's an individual. It's what you have pled here. And if we can talk about that a little bit, it seems like you're asserting because we have to focus, I think, on standing here. And it seems you've made pretty clear in your briefing that YCS does not seek redress for economic harms. Is that correct? Yes, Your Honor. Okay. And it sounds like you're asserting that the District Court should have looked only at your asserted interest in conservation to determine whether YCS had standing. Is that correct? That's correct, Your Honor. So I guess I want to ask you, where in the complaint do you think YCS establishes an interest in conservation? Well, Your Honor, if I may pull up the complaint here, but YCS alleged in the complaint that it had a longstanding interest in the conservation of the Bay Checkerspot butterfly, which was evidenced by its years of efforts and millions of dollars spent managing habitat for the benefit of the butterfly, studying the butterfly and its habitat, both within Young Ranch and elsewhere, sharing the results of that research with the scientific community, and participating in scientific studies. And I guess that's where my question is going to, is the conservation interest sufficient on its own to establish a concrete and particularized entry, which is what you need to establish here under the ESA? Your Honor, I believe so. For instance, in this court's opinion, in the Salmon Spawning Recovery Alliance case, the court looked to scientific, educational, conservation, and other interests to support standing. And in fact, it explicitly said the avoidance of harm to listed species is a concrete interest for purposes of standing. That's exactly what YCS is alleging here, that it has a longstanding interest in the conservation, or avoidance of harm, to this listed species that it's trying to protect. Maybe this is the same question Judge McGee is asking, but just state to me as directly as you can, what is the injury that the FWS caused you? What's the injury? Yes, Your Honor, the injury is that unless the service takes action and fulfills its obligations, the survival of the bay checkerspot butterfly will be in peril. And as the Supreme Court said in the Lujan opinion, it's clear a person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm. Our allegation is that the service's actions and inaction in refusing to re-initiate consultation will lead to the extinction of this species, including the populations on Young Ranch. Mr. Russ, that doesn't seem to me to be the thrust of your complaint. The thrust of your complaint is you can't get a development permit from the county, which you allege you need in order to try and conserve the habitat by making this a profitable real estate development. Isn't that what the problem is? Your Honor, YCS has said that some economic engine is required to make it economically viable to conserve and manage in the long term the habitat on Young Ranch for the benefit of the BCB. But why couldn't the county's goal be achieved if your client simply deeded the property to a conservation trust or to county and gave up all efforts to commercially develop any portion of Young Ranch? Wouldn't that be to the benefit of the butterfly and its habitat? Well, first of all, no, Your Honor. Simply foregoing development is not enough to maintain the habitat. It requires active management, which comes at a cost. Second, there's no requirement for a plaintiff to take a vow of to have standing to sue. In this case, while we could make a hypothetical scenario in which YCS agrees to donate its property to the habitat conservation plan, I don't believe that it is YCS's obligation to take that step to ensure the survival of this species. That's the service's obligation. But going back to Judge Tashima's question, it seems to me that your answer has to We need the development permit from the county so that we can develop our green conservation community, thereby generating profits that we can then use to improve the habitat for the butterfly. Isn't that what you're asking for? That is not what we're asking the court for, Your Honor. What we're asking the court for, so broadly speaking, I guess I'd say there are two here. YCS had a plan to conserve Young Ranch. The county has thwarted that, so that's one possibility gone. The second possibility is that the service requires changes to the conservation plan to overcome the fact that Young Ranch, which the plan relies on, is no longer available for conservation, and that is an alternative way of protecting the species and its habitat. But why isn't it available for conservation still? You're trying to say that what the county did was not relevant to you, or it was relevant, but it's not economic, and I'm not quite sure how that's not true, because it seems like what you're saying now is that because of what happened by the county, we don't have enough funds to do conservation. Is that what you're saying? Because at the same time, you're claiming you're not here because of an economic harm. So I just want to understand your argument. Yes, that's right, Your Honor. We're not claiming economic harm, but we are saying that as a matter of economic reality, it is not feasible for YCS to continue managing the property indefinitely at a loss for the Where have you shown anywhere in the plan that by not doing what you're doing, that somehow that would affect the butterflies? Sure, Your Honor. There's extensive evidence in the record and cited in our briefs, which I'm not sure I have time to find, that's saying that one, active management, including both a special, a specific kind of managed grazing for conservation purposes, as well as things like goat grass eradication, which are additional intensive habitat restoration efforts, are required in order to maintain the habitat. If you just take your hands off it and let it go, the native plant species that the butterfly relies on and requires for its life cycle But you can't, but you can't do any of that without the income that comes from development of 10% of the property, right? And that, at least according to the government's position, I understand it is, and the impediment to that is you can't get a permit from the county to develop. Isn't that your, isn't that the cause of your immediate injury or the immediate cause of your refusal to give you a development permit? It's one contributing factor, Your Honor, but What's a greater, you know, immediate contributing factor to your injury, the only way you can develop this conservation community? Because you don't have any income. Well, what's a greater, you know, cause of that injury than the refusal to grant you a permit? If I may, Your Honor, the injury is not the inability to develop the conservation community, although the government has characterized it that way. The injury is the harm to the species and to YCS's demonstrated interest in the conservation of that species. That's just the same harm one step removed. Because, you know, if you take two steps the other way, it goes back to the same cause. Doesn't it? And the other thing I don't understand is if we grant you the relief that you're asking for and invalidate the existing incidental take permit and the habitat conservation plan that justifies it, then no development at all is going to be permitted. The entire 460,000 acre general plan will be, in essence, in limbo and the county won't be able to issue general development permits to anybody. So how does that help YCS? Well, Your Honor, no take of the BCB would be authorized in that case either until the service had reconsidered the plan and come up with a viable conservation strategy that doesn't depend on Yonge Ranch as the linchpin of BCB habitat connectivity. But the federal judgment doesn't redress the injury that you're asking for. You're going to be in the same boat that you are right now. You can't get a development permit, which you say you need to generate money to do all these habitat management and improvement activities. Yes, but again, Your Honor, YCS has demonstrated an interest in the conservation of species that goes beyond its interest in this particular property. And while it may be true that the court's decision will not allow YCS to develop the property the way it proposed for the conservation community, it will require the service to take some measures to revise the plan and find a way to provide for the conservation of this species that's viable and doesn't depend on Yonge Ranch. But the plan could come back even more stringent than it is now. I mean, sort of be careful what you ask for here in the sense that Fish and Wildlife might take another look at this thing and say, you know, we made a mistake back in 2013. We shouldn't have allowed any development at all in this area. Sure, Your Honor. And again, we are not expecting that the outcome of this would be for the service or anyone to say that an alternative, since this option has been foreclosed by the county's actions. I guess I'm, go ahead. It seems pretty clear that a corporation subject to, you know, to regulation can assert economic interest to establish standing. I guess, why didn't you do that here? Why didn't we assert economic interest, Your Honor? Yeah. Those are not the interests. Those are not the interests we're trying to protect. Okay. So, YCS, as the government has noted, YCS has filed a lawsuit against the county. And in that lawsuit, it seeks damages to recover for the county breach of the settlement agreement. It's not seeking that in this lawsuit. But, by the way, just for information, where does that lawsuit stand now? What status is there? Your Honor, I believe it has been, it is set to proceed to trial. I believe a motion for summary judgment was denied, but there hasn't been a trial date scheduled. Okay. Do you want to reserve the balance of your time? Yes. Thank you, Your Honor. Mr. Brabender, do you want to state your appearance, please? Yes. Thank you. This is Alan Brabender with the Department of Justice here on behalf of the U.S. Fish and Wildlife Service. The district court correctly concluded that YCS investments lacked Article 3 standing. They lacked injury in fact, failed to show causation, and failed to show addressability. Now, let me begin with what I think is the most straightforward analysis, and that is the lack of causation, the clear lack of traceability between the alleged harm and the Fish and Wildlife Service. Now, to recap the alleged harm as alleged in the complaint, and this is the only harm that is alleged in the complaint, is that unless YCS can build 79 executive homes, meaning large homes on two-acre plots in the heart of Silicon Valley, and the presumably millions of dollars they would make from this, they will not be able to afford to maintain the remainder of their property for the butterfly, and the butterfly will perish, and their interests, alleged conservation interests, will be harmed. The problem there is it is the County of Santa Clara and the County of Santa Clara alone that will not allow YCS to build its proposed development, and that's because the proposed development violates the county's general plan, the open space and density requirements of the county's general plan. The county's general plan is a requirement of California law. It is not an ESA document. It has nothing to do with the Fish and Wildlife Service, so there's a sort of clear lack of traceability here to the Fish and Wildlife Service. But you're arguing that the causes of actions by YCS are substantive rather than procedural, and I guess I'd like to know what your best authority is that the procedural standing test doesn't apply here. Well, it's more nuanced than that, Your Honor. The first four claims are substantive APA claims. The final claim is a... Go ahead. The final claim, the fifth claim, is an arguably procedural reinitiation claim that arguably relaxes the eminence and regressibility prongs of standing. It seems like our court treated, you know, violations of Section 7, including the insufficiency of a biological opinion, as procedural in the salmon spawning case, and I'm just trying to figure out are you going a different approach? I'm trying to see if that is, and if so, how can we distinguish that case from what's going on here? No, I don't think the first four claims are APA claims. They're not ESA claims. I'm not familiar enough with the salmon spawning case at this point to be able to distinguish it, but the first four claims, I don't even think the plaintiffs are APA claims. Now, the Section 7 claim is an ESA citizen suit claim, which is arguably procedural under this court's case law. I think the United States would disagree that it is the kind of claim that relaxes the regressibility standard, but there's at least some case law in this court that would suggest so. But in any event, even if regressibility is relaxed, injury, in fact, is not relaxed, and causation is also not relaxed. Now, the plaintiffs do sort of misquote the Lujan versus Defenders of Wildlife case when arguing that causation is also relaxed. What Lujan versus Defenders of Wildlife held is that imminence and regressibility are relaxed, not causation, not injury, in fact. Now, but there are also many Ninth Circuit cases that get the quote correct, and we would suggest that this court should follow the line of cases that correctly quotes Lujan. But Mr. Brayberger, I thought the first four claims are ESA and APA claims. No, they're, well, they're APA claims because there is no independent statutory authorization for them in the ESA. The Section 7 claim is... Well, Section 7 is the consultation provision and the citizen suit provision. Right, but in order to... Section 11, right? Right, so this, in order to bring a consultation, well, a failure to consult claim, you have to bring a citizen suit claim under the citizen supervision of the ESA. The other four claims, again, are substantive APA claims. They're not brought pursuant to the citizen suit of the ESA. So, you're saying that a claim that challenges the methodology that Fish and Wildlife Service used in approving the incidental take permit is actually an APA claim as opposed to an ESA claim? That's correct. Okay. I'm sorry, I can't cite a case off the top of my head, but you should be able to find those cases that make this distinction, Your Honor. Mr. Berryman, I want to turn to something else. I want to know, is it the government's position that a for-profit corporation cannot have a conservation interest sufficient to give its standing? No, that is not the government's position, no. So, that's not something we have to get by in order to get to the merits, is that right? It's not your position that we have to- That's not, I think it's a different question whether or not this particular corporation has a sufficient interest in conservation. And that's a different inquiry because even if we accept that YCS has sort of a mere interest in conservation of the butterfly, a mere interest is not enough under the organizational standing test as articulated by the Supreme Court in cases such as Havens Realty and in Sierra Club versus Morton. Now, to show that we have a genuine interest that's more than a mere interest, you have to meet the organizational standing test, which asks whether in response to the challenged actions, the corporation has diverted resources and whether the challenged actions frustrate the organizational mission. And we would submit that haven't done so here. They have not suffered a diversion of resources. They have spent money on litigation and on preparing for litigation, but that's not enough under this court's case law. They have voluntarily spent money on things such as studies and on actively managing their property, but that too is not enough because- But wouldn't they have to spend that money anyway under California development law? In other words, you'd have to basically meet certain environmental requirements as part of your development plan. That may be, your honor. I'm not familiar enough with California development law to say either way. But what I also want to say is these expenditures are pre-existing the challenged actions, so they were not spent to counteract the challenged actions. They were not spent to counteract the plan or the permit or the lack of a decision to re-initiate consultation. And the challenged actions also do not frustrate any conservation mission that YCS may have. There's nothing in the plan or the permit that prevents YCS from continuing to study butterfly or butterfly habitat. There's nothing in the plan or the permit that prevents the plaintiffs from actively managing their land. And certainly they have come up with sort of generalized harms to the butterfly in general, but they must show particularized harms. And we would submit they have not done that. They haven't done it enough to show that they have a legitimate interest that is under threat. And even if they did have a legitimate interest under threat, it is caused either by a stranger to this litigation, i.e. the county, or it is self-inflicted. And it is self-inflicted because they refuse to conserve butterfly habitat unless they can build 79 homes. In a way, their sort of economic interests are also a failure to show redressability here. As explained, it's the general plan that is preventing the development of this property and the harm that flows there from. And the county is an independent actor not before this court. So setting aside the habitat conservation plan or the permit or requiring consultation will not bring the development into compliance with the county's general plan. So all this harm will remain. And our redressability and our causation arguments to apply to all five claims, not just the reinitiation claim, because the only allegation of harm that is in the complaint relates to the unavailability of the permit. And to some extent, and certainly in their reply with some vigor, they have now alleged a sort of new theory of harm, which is not in their complaint. And that is based on the theory that the plan and the permit authorized take. And then if you set aside the plan, they will no longer be take. There will no longer be take that is authorized, and that will benefit species. Now that, I guess, sounds good on its face, but this new theory is not viable for a couple of different reasons. First of all, it is based on generalized harm to the species. It is not enough to show harm to the environment in general. For Article 3 purposes, you must show harm to your particularized interests in the environment. And plaintiff's all relate to Yonge Ranch. The problem there is there are no allegations of take either ongoing or proposed at Yonge Ranch. So setting aside the plan or the permit will not in any way redress those injuries. And any claims regarding future take, I guess, are too speculative to support Article 3 standing. Now, because redressability is entirely lacking here, any relaxed standard that the plaintiffs may seek to rely on is simply not relevant. And as this court has said in several cases, while redressability is relaxed, it is not toothless. And here again, redressability is just entirely lacking. And again, with respect to this relaxed standard, it only applies to the fifth claim, not the first four claims. It doesn't apply to injury in fact, and it doesn't apply to causation. Director Brabrandt, can I ask you, you seem to be focused on organizational standing. Have we ever held that a for-profit organization is required to plead organizational standing? Not that I'm aware of, but I think the opposite is also true. You have also not held that a for-profit corporation does not have to show organizational standing. And really, I don't think that it makes any sense to hold for-profit corporations to a higher standard, or non-profit corporations to a higher standard than for-profit corporations. And I appreciate that you pointed that out in the briefing, but why aren't YCS's hopes to build a conservation community sufficient to establish organizational standing? I don't think the efforts to build a conservation community, I don't think they have shown that that is a legitimate conservation interest, rather than the sort of economic interest in sort of marketing the property to executives who would be willing to pay for it to live in a community. So would this be the first case where we explicitly are requiring a for-profit corporation to establish organizational standing? You're saying we don't have it? I didn't see any case law. And as you said, the opposite is also true. But so this seems like this might be more organizational standing to a non-profit or for-profit, I mean, to a for-profit corporation, then that seems like that would be significant here. Well, we didn't cite any cases in our brief, as YCS pointed out. But this is sort of an unusual case. I mean, you know, individuals typically, it's easy for individuals to establish standing in these types of cases, as a general matter, because they... I agree with you. And I don't understand why someone from YCS didn't do the typical individual appreciating the aesthetics of, you know, the butterfly, but they didn't do that here, right? So that's why we're in this sort of interesting posture. Right. And corporations... Help me understand. Go ahead. I was going to say corporations usually... Help me understand. Go ahead. I'm sorry, Your Honor. My simple point was corporations usually assert economic interest, and so it's usually easy for them to establish standing as well. Yeah, I know. So that's the asserting or they're disclaiming economic interest. There's some people who, you know, I mean, there's some reason to maybe, you know, question that. But my concern is we have to take their asserted assertions as true. And if we have to assert, you know, accept their assertions as true, then I'm just trying to figure out, you know, do we go to organizational standing or do we go to procedural standing? Because I'm just kind of concerned if we go to organizational standing because I'm not sure there's enough here, you know, to really figure that out, and especially if we don't have any precedent. But I guess what are your views on that? And if there's EPA and APA violations asserted in the first four claims, where, in your view, are we left? Your Honor, I don't think procedural standing is a viable option because you, under cases such as Summers v. Earth Island and Wilderness Society v. Ray in your court, procedural standing on its own is not enough. You have to show legitimate injury in fact. And that turns back, I think, again to the organizational standing test. YCS is an organization. I don't think it should depend, the applicability of the test shouldn't depend on whether or not they're seeking a profit or not. They're an organization and they should have to meet the organizational standing test. And unless the court has any other questions, I've seen them over time. Okay, thank you. Thank you. Mr. Rusk. Thank you, Your Honor. Very quickly, first of all, the first four claims, I don't believe that the government's arguments about causation and redressability have anything to do with those claims because they do not depend on the unavailability of Young Ranch for conservation. They depend on the flaws in habitat modeling, analysis of nitrogen deposition, and other scientific issues that YCS identified way back in 2012-2013, long before these things with the county happened. It doesn't make a difference to those claims whether YCS is available or not. Second, the first, second, fourth, and fifth claims all allege violations of S.A. Section 7. And I believe Your Honor is correct that those are all procedural injury claims. If you look at the salmon spawning case, the first claim was a Section 7 challenge to the issuance of a biological opinion. But why don't you respond to Mr. Brabender? Are those first four claims E.S.A. and A.P.A. violations or just A.P.A. violations? I don't think it matters, Your Honor, whether the claim is authorized by the A.P.A. or by the E.S.A.'s citizen supervision. What matters is whether they allege a violation of a substantive obligation or a procedural obligation, which is the consultation obligation. What's the answer to my question? I appreciate that you do think it doesn't matter, but what are you saying in your complaint when you filed it? Did you think they were A.P.A. violations or E.S.A. violations? We think they're authorized by the E.S.A. citizen supervision, but in the event that the court disagrees because there's some ambiguity about that, we think they are clearly authorized by the A.P.A. So we plead them basically in the alternative. But again, the substantive law that a violation is being alleged of is neither the E.S.A. nor the citizen supervision or the A.P.A. It's E.S.A. Section 7. I have a question regarding organizational standing. You failed to make any allegations about conservation, how it was germane to its organizational purpose of YCS in the complaint, at least from what I can tell. So I'm curious, why shouldn't YCS have to establish organizational standing just like a non-profit corporation would? Your Honor, I don't think the issue is whether it's a for-profit or a not-for-profit corporation. I think the issue is that in the organizational standing cases, we see plaintiffs who are really not directly injured. They're not asserting their own interests. A typical case would be a not-for-profit organization that seeks to combat housing discrimination against other people, individuals, members of minority groups who've been discriminated against. Because it hasn't suffered the injury to its own interests from that discrimination, it has to have another way of showing that it was injured. And so we look to was this purpose frustrated, were its resources diverted, and so on. Here, YCS is asserting its own conservation interests related to its There's no reason to look to one removed to find the injury. Well, you're saying your conservation is relevant to YCS's purpose as an organization. Is that what you're saying, and that's enough? Yes, Your Honor, and the best evidence of that is not whether or not the articles of incorporation mention conservation or some species, but the years of activities, effort, expense that YCS has gone to to further scientific study and conservation of this butterfly. But wouldn't you have to do those activities in order to get the development permit? No, Your Honor, and certainly to your earlier question, a developer in California with a sort of raw land would likely need to engage in some studies of its property to sort of set the stage and understand what resources it needs to work around. Particularly where the property contains habitat of a threatened species. Sure, but in this case, Your Honor, in Mr. Cross's declaration, he specifically stated that I believe he said in about half of the expense and surveys and other activities undertaken had nothing to do directly with development of the property or being able to permit development on Young Ranch, that they were done specifically for the purpose of furthering understanding of the species and its habitat on the ranch and elsewhere and contributing to conservation. I guess I'm having a hard time understanding where that line is drawn, where you have raw land that can no longer be profitably operated as a ranch to graze cattle, but instead has to be developed commercially, at least a portion of it, to generate funds in order to pay for the preservation of the habitat. That's where I find it difficult to draw the line. Your Honor, I'm not sure I know the answer to that, but I think that the economic interest and Supreme Court, you said in the Hobby Lobby case, we don't require corporations to pursue just economic interest. They often don't just pursue economic interest and they're not mutually exclusive. But your argument is different from Hobby Lobby. Your argument is the habitat needs to be managed and improved and that takes money and the only way we can profitably do it is to and generate sufficient profit so that we can pay for eradication of the goat grass and other habitat, you know, certain types of cattle grazing that I guess somehow improve the habitat of the butterfly. Isn't that the case? It is true that the conservation and economic objectives of the by definition, that's the idea, is that the economic activity supports the conservation activity, but here YCS is looking beyond that. As I said, that was their plan to fund this, to fund the conservation of this property consistent with the regional strategy in the Habitat Conservation Plan and that's no longer viable and they're simply going to the service like any concerned party could and saying this is new information that shows the plan cannot be implemented as you approved it. You need to take action. You need to reconsider the plan. Well, let me follow up on that because I think what Judge Tallman just said I think is probably an appropriate sort of summary, but if you disagree with that or for whatever reason, can you just tell me what is wrong with the plan? What do you take issue with in the plan that will cause, that is causing the harm that you are alleging, which I'm not quite sure, you know, your ability to promote and conserve the butterfly and to further research it? What in the plan is harming that ability if what Judge Tallman said is not true? It differs between the first four claims and the fifth claim. As to the reinitiation claim, the fifth claim, which I believe you're asking about first, the flaw in the plan or the new information that requires reinitiation is that the plan absolutely depends on incorporating Young Ranch into the habitat conservation strategy. In particular, what they call Linkage 6, which is stated to be absolutely vital to the conservation of this species, is a corridor that runs smack through Young Ranch. You cannot complete Linkage 6 without the ranch. Did Young Ranch make those points during the development of the habitat conservation plan to Fish and Wildlife? I'm really asking what's new here, because you made those arguments to Fish and Wildlife, although you now say you disagree with the way that the agency evaluated the information that you provided. Yes, Your Honor. At the time the plan was being considered, we said it is uncertain, you know, that you ought to know. It's uncertain whether all these conservation objectives can be achieved, including whether Young Ranch can be incorporated into the habitat conservation plan. But after that, the county's actions have made it indisputably clear that, in fact, Young Ranch cannot be incorporated as designed into the habitat conservation plan. I guess, Mr. Russell, what troubled me is that with regard to the status quo here, it hasn't changed. The county wouldn't give YCF development permits in 2013, 2014, and it won't give them development permits now. So what's different to justify re-initiation of the consultation? Your Honor, prior to the events that we say justify re-initiation, the county and YCF had entered into a settlement agreement, as we counted in our complaint, under which the county represented that, in essence, the road to approving the conservation community was open in terms of consistency with the general plan and other factors that would allow it to approve the proposed plan of development and conservation. That changed with the county's preparation of EIR, finding that the plan was inconsistent with the general plan, and its subsequent statements to that effect, as well as evidence that YCF uncovered in discovery in the state court lawsuit, showing that the county had essentially determined that no matter what, there was no way it would approve this plan. If you win the Superior Court action, then you would get a development permit, would you not? No, Your Honor, we would not. Why not? Well, because neither YCF nor the court can require the county to exercise its discretion in that way. What we're seeking in that suit is money damages for the county's repudiation or violation of the settlement agreement, and its actions that prevented YCF from being able to use its property. So, if you could go to the four claims, though, and I think this is what Judge Tasheem was started off asking you, but what is wrong with the plan? I mean, how would it affect with respect to the first four claims? Because it seems like your complaint is very vague about this. I'm trying to figure out why the plan needs to be reviewed, or what's wrong with it at this point. Talk to separate from claim five. Yes, Your Honor. So, to take one example, YCS has alleged that the habitat modeling that the plan is based on is flawed and overstates the amount of quality habitat available for conservation. That means that those conservation objectives, the mandatory conservation goals of the plan, for instance, how many acres of serpentine grassland have to be conserved? How many acres of, you know, other vegetation types or wetlands or what have you need to be conserved? Those goals cannot necessarily be achieved. The information they're relying on to say that those goals are attainable is inaccurate. And YCS submitted a bunch of modeling data in support of this position, and the service, in our view, basically just ignored it. So, why did you wait to now to bring the suit? Why didn't you file suit in 2013 when the service issued the incidental date permit? Well, Your Honor, YCS has continued to try to find a way to make the conservation strategy work. It has, you know, with respect to the ranch specifically and their dealings with the county, it has, you know, been going through a process where it's trying to get that conservation community approved. And the county's actions and the subsequent revelations about, you know, kind of the kind of determination not to approve the plan have presented YCS with no other options. So, that's why they waited until the day before the statute of limitation expired to file the lawsuit against the county? Or excuse me, to file a federal action. They had to make a decision at that point. We were aware of the limitations. They had to make a decision whether to bring these claims or not. Okay. Tashima, do you have any other questions? No, I don't. Mr. Talmadge? No, I do not. Mr. Russ, I'm sorry we took you way over time, but we had some questions, obviously, that we felt were important enough to ask. So, thank you for your oral argument presentation. Mr. Brabender, thank you as well for your oral argument presentation. The case of the YCS investments versus United States Fish and Wildlife Service is now submitted. I hope that you all and your families are safe and well. Thank you very much. And that concludes our docket for today and the week. We are adjourned. Thanks. Thank you both. The score for this session stands adjourned.
judges: Tashima, Tallman, Murguia